IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WALTER E. BONNING,<br><br>　　　　　Petitioner,<br><br>v.<br><br>MICHAEL J. ASTRUE,[1]<br>Commissioner of Social Security<br>Administration,<br><br>　　　　　Respondent. | Case No. 1:06-CV-00213-MHW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## Introduction

Currently pending before the Court for its consideration is Petitioner Walter E. Bonning's ("Petitioner") Petition for Review (Docket No. 1) of Respondent's denial of social security benefits, filed May 31, 2006. The Court has reviewed the Petition for Review, the Answer, the parties' memorandums and the administrative record (AR), and for the reasons that follow will affirm the decision of the Commissioner.

---

[1] Pursuant to Fed. R. App. P. 43(c)(2), upon his appointment as Acting Commissioner of Social Security on February 12, 2007, Michael J. Astrue is substituted for Jo Anne B. Barnhart.

**Memorandum Decision and Order - Page 1**

# I.
## Procedural and Factual History

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on October 20, 2004, alleging disability due to status post cholesteatoma, vestibular dysfunction including vertigo, dizziness, headaches, left ear hearing loss, difficulty balancing and fatigue, Bells palsy, impaired left eye vision, and a major depressive disorder. Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed.

Administrative Law Judge (ALJ) John C. Arkoosh held a hearing on November 30, 2005, taking testimony from Petitioner, clinical psychologist Mike Dennis and vocational expert Anne Aastum.  (AR 291–302.)  ALJ Arkoosh issued a decision finding Petitioner was not disabled on January 26, 2006. (AR 19–29.)

Petitioner filed a timely appeal to the Appeals Council which denied his request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 6–8.)  Petitioner appealed the final decision to this Court, and the Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 40 years old.  He has a high school education and his past relevant work includes jobs as a supervisory cashier, stock clerk, and sales person.

# II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined whether the claimant is engaged in substantially gainful activity.  The ALJ found Petitioner had

not engaged in substantial gainful activity since his alleged onset date. At step two, it must be determined whether claimant suffers from a severe impairment. The ALJ found Petitioner's status post cholesteatoma, vestibular dysfunction including vertigo, dizziness, headaches, left ear hearing loss, difficulty balancing and fatigue, Bells palsy, impaired left eye vision, and major depressive disorder "severe" within the meaning of the Regulations. Step three asks whether a claimant's impairments meet or equal a listed impairment. If a claimant can show he or she is limited by such an impairment, disability is presumed. The ALJ here determined that Petitioner did not possess the findings upon examination that are required in order for disability to be predicated on medical considerations alone, because Petitioner's impairments did not meet or equal the criteria for the listed impairments. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Petitioner was not able to perform his past relevant work as a supervisory cashier, stock clerk, or sales person. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Having found Petitioner disabled at step four, the ALJ proceeded to step five and found Petitioner was able to perform other work existing in significant numbers in the national economy, such as mail clerk, injection molding machine tender, and office helper. Accordingly, the ALJ found that Petitioner was ineligible for benefits.

**Memorandum Decision and Order - Page 3**

## III.
## Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Univ. Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir.

**Memorandum Decision and Order - Page 4**

1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## IV.
## Discussion

Petitioner believes the ALJ erred at the fourth and fifth steps of the sequential evaluation process.[2] He specifically contends that the ALJ did not consider the totality of the medical evidence when the ALJ concluded that Petitioner retained the residual functional capacity to engage in substantial gainful activity. Second, Petitioner asserts that the Appeals Council failed to give proper weight to the opinion of Dr. Brait. Finally, Petitioner maintains that no

---

[2] Petitioner also argues that the ALJ found that Petitioner did not continue to suffer from vertigo, headaches and black outs, which finding was unsupported by the evidence. To the contrary, however, the ALJ expressly found that Petitioner did indeed suffer from these ailments. (AR 20, 24). Rather, the issue raised by Petitioner is properly discussed in the context of steps four and five in relation to the ALJ's findings concerning residual functional capacity and ability to engage in other types of work despite Petitioner's physical limitations.

**Memorandum Decision and Order - Page 5**

explanation was given for rejecting Petitioner's own testimony. The Court will address each of these arguments in turn.

**A.      ALJ's Evaluation of Petitioner's Medical Evidence.**

Petitioner contends that the ALJ did not consider his medical records as a whole, failing to consider other treating or evaluative opinions and instead favoring the positive treatment notes from his treating physician, Dr. Maughn, from his early postoperative period. Petitioner specifically contends that other physicians who evaluated or examined him, including psychologists Dr. Smith and Dr. Burke, and a physician's assistant, Gary D. Myers, had opinions inconsistent with Dr. Maughn's early post operative analysis.

In cases involving an application for Social Security disability benefits, the Ninth Circuit Court of Appeals has distinguished among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citations omitted). The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician. *Id.* (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). Further, the opinion of an examining physician, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester*, 81 F.3d at 830 (citing *Andrew v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).

The ALJ is also responsible for resolving conflicts and ambiguities in the medical testimony. *See Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If a treating or

**Memorandum Decision and Order - Page 6**

examining doctor's opinion is contradicted by another doctor, then an ALJ may reject a treating physician's opinion for "clear and convincing reasons." *See Morgan v. Comm'r of SSA*, 169 F.3d 595, 600-602 (9th Cir. 1999) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).  When the treating or examining doctor's opinion is contradicted by another doctor, then an ALJ must give "specific, legitimate reasons" for rejecting controverted medical opinions and may do so by summarizing the conflicting evidence in detail and interpreting it.  *See Magallanes v. Bowen*, 881 F.2d at 751 (9th Cir. 1989).  The court may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755; *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

      The Petitioner argues that the ALJ improperly favored the opinion of treating physician Dr. Maughn and overlooked other medical evidence from additional treating physicians contradictory to Dr. Maughn's positive post operative prognosis.  In the decision, the ALJ set forth an extensive summary and analysis of the medical evidence.  (AR 22–27).  In the ALJ's view, the entirety of the medical evidence was consistent with Dr. Maughn's early postoperative opinions.  Four months postoperatively in October 2003, Dr. Maughn stated that Petitioner was "doing very well," had "no limitation on balance," and was "back to full function."  (AR 25). The ALJ found Dr. Maughn's opinion to be consistent with Petitioner's self-reports and other medical practitioners who examined him at that same time.  (AR 25).  For instance, Petitioner reported "feeling good," and he cancelled his remaining physical therapy treatments.  (AR 25). In September 2003, the Southwest Idaho Center for Balance Disorders ("SICBD")  reported that Petitioner had a normal gait pattern on level surfaces, performed tandem, abrupt stops, and walked with head turns without difficulty.  (AR 23).  Petitioner cancelled follow-up medical

appointments with SICBD "due to feeling good."  (AR 23).  Dr. Merrel, Petitioner's optometrist, reported on September 9, 2003, that he had 20/20 vision in both eyes with best correction, his visual field and muscle functions were normal, and that he had useful binocular vision and depth perception in all directions with glasses.  (AR 23).

In both August and December 2005, Petitioner sought the care of P.A. Myers and self-reported intermittent vertigo, headaches, and blackouts.  P.A. Myers examined Petitioner and reported that Petitioner denied persistent unilateral weakness, was ambulatory, walked with a smooth and steady gait, was oriented and alert, had cranial nerves intact, had deep tendon reflexes 2/4 throughout, could take over the counter medications to alleviate his headache symptoms, and prescription medication for his vertigo. (AR 25).  Despite these findings, P.A. Myers expressed that Petitioner was a "good candidate for Social Security Disability due to his vertigo."  (AR 25).  However, the ALJ gave specific reasons for rejecting Dr. Myer's opinion, noting that P.A. Myers was the only examining practitioner to express that opinion.  The ALJ further explained in detail that the opinion was inconsistent with the findings summarized above from the documented records, Dr. Maughn's opinion, and Petitioner's activities of daily living.

In 2004, psychologists Smith and Burke examined Petitioner for his major depressive disorder.[3]  Dr. Smith reported that Petitioner articulated well, that his cognitive processing was grossly intact, and that he was oriented with a broad range of affect.  Dr. Burke noted that Petitioner reported headaches, but denied difficulties working with supervisors, co-workers and the public. (AR 23).  Dr. Burke's examination revealed that Petitioner revealed a normal speech

---

[3] Petitioner argues that Drs. Smith and Burke examined him in relation to his vertigo, headaches, and blackouts.  While Drs. Smith and Burke obtained a history of Petitioner's medical complaints, the record does not support Petitioner's assertion that their evaluations related to anything other than a psychological exam.

**Memorandum Decision and Order - Page 8**

pace and volume, that his thought process was logical and coherent, and that Petitioner was capable of understanding, remembering and carrying out an extensive variety of complex and uncomplicated functions with the ability to perform simple one– and two–step instructions so long as the tasks did not require interaction with others. (AR 24).

These treatment opinions were consistent with an April 2005 review of Petitioner's psychological records by Dr. Sanford, a Disability Determination Service psychological consultant, as well as with Dr. Dennis's opinions expressed at the hearing. Dr. Sanford reported that claimant had no significant limitations with understanding and memory, and only moderate limitations to maintain attention and concentration for extended periods. (AR 24). At the hearing, Dr. Dennis echoed the examining psychologists' opinions, stating that Petitioner's depressive disorder did not significantly restrict his activities of daily living, and only moderately affected his maintenance of social function, concentration, and persistence. (AR 26).

There is no support in the record for the Petitioner's argument that the ALJ failed to take into account the opinions expressed by other physicians who either examined or evaluated Petitioner or failed to consider the medical record as a whole. Rather, the ALJ's conclusion to give controlling weight to the treating physician's opinion is consistent with other substantial evidence in the record. The ALJ also summarized the entirety of Petitioner's medical evidence and interpreted it succinctly, resolving any ambiguity between the different opinions. Because the record contains substantial evidence to support the treating physician's initial postoperative conclusions and the conclusions of the treating psychologists, the ALJ's decision is supported by substantial evidence and was not the product of legal error.

**Memorandum Decision and Order - Page 9**

B.     **Review of the Appeals Council Decision.**

Petitioner argues that the decision of the Appeals Council denying Petitioner's request for review should be overturned because the Appeals Council, despite evaluating the opinion of Dr. Brait, denied review. Dr. Brait submitted a Residual Functional Capacity Questionnaire at Petitioner's request dated April 3, 2006, which was subsequent to the ALJ's written decision.[4] (AR 256–259).

42 U.S.C. § 405(g) grants the district court authority to review the "final decision" of the commissioner. When the Appeals Council has denied review, the final decision is the decision of the ALJ. *Ramirez v. Shalala*, 8F.3d 1449, 1451–52 (9th Cir. 1993). *See also Fry v. Massanari*, 209 F.Supp.2d 1246, 1251–52 (N.D. Ala. 2001) (holding that the Appeals Council's decision is subject to review when it has been presented with new evidence and has considered that evidence, and citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). While the Court may consider the new evidence in its determination of whether the denial of benefits is supported by substantial evidence, the proper remedy should the Court hold otherwise is to remand the matter to the ALJ for consideration of the new evidence. *Harman v. Apfel*, 203 F.3d 1151, 1160 (9th Cir. 2000). In determining whether to remand, the Court should consider whether the evidence is new and material and if there was good cause why it was not previously presented to the ALJ. *Matthews v. Apfel*, 239 F.3d 589, 593 (3rd Cir. 2001) (citing *Keeton v. DHHS*, 21 F.3d 1064, 1067 (11th Cir. 1994)). The evidence is material if it bears directly and substantially on the matter in dispute, and presents a "reasonable possibility of changing the outcome of the

---

[4] Petitioner argues that the ALJ failed to properly assess Dr. Brait's opinion. This argument is without merit, as Dr. Brait's opinion was not available to the ALJ and was clearly submitted in support of Petitioner's appeal to the Appeals Council. Thus, to the extent Petitioner attacks the decision of the Appeals Council, the Court will address that argument.

**Memorandum Decision and Order - Page 10**

Secretary's determination." *Burton v. Heckler*, 723 F.2d 1415, 1417 (9th Cir. 1984).

Remand is inappropriate in this matter based upon the evaluation by Dr. Brait. The opinions expressed in Dr. Brait's report are not new. His opinion that Petitioner could sit throughout a normal work day, suffered from vertigo, and could adequately lift and/or carry 20 pounds are consistent with the opinions of Dr. Coolidge, a Disability Determination Service medical consultant whose opinions were considered by the ALJ. (AR 24). Nor are Dr. Brait's opinions material, considering that Dr. Brait does not actually express any conclusive opinion concerning Petitioner's residual functional capacity and ability to return to work. As such, the matters discussed in Dr. Brait's report are not likely to change the outcome of the prior determination. Finally, Petitioner did not present good cause as to why Dr. Brait's opinion could not be provided earlier such that the ALJ could consider it.

The Court therefore finds insufficient reason to remand for further consideration of Dr. Brait's report, and that the denial of review by the Appeals Council was not in error.

**C.     Petitioner's Credibility.**

Petitioner argues that there was no explanation given for rejecting his complaints and testimony. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (noting that an ALJ may not discredit a claimant's subjective

testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 157 F.3d at 680. General findings are insufficient, and the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002). Also, the ALJ may consider: location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *Burch*, 400 F.3d at 680. *See also* Soc. Sec. Ruling 96-7p.

The ALJ noted that Petitioner's activities of daily living are inconsistent with the disabling vertigo, headaches, and blackouts he claims. The daily activities the ALJ referenced included taking care of animals, cooking, doing laundry, cleaning, chopping wood, driving, grocery shopping, watching television, and socializing with friends. (AR 26). The ALJ also noted that Dr. Maughan, the Petitioner's treating physician, stated that post surgery Petitioner

**Memorandum Decision and Order - Page 12**

was "doing very well," had "no limitation on balance," was "back to full function," and cleared him to return to work as of July 22, 2003. (AR 25, 26, 153, 155). The ALJ discussed that the Petitioner's treatment history and objective medical evidence do not suggest the presence of severe unrelenting headache pain or disabling functional limitations resulting from vertigo and blackouts. The record further shows Petitioner failed to seek significant forms of treatment such as physical therapy, pain medications for his headaches, and anti vertigo medications. (AR 23, 25, 146–47, 241).

The ALJ noted inconsistent statements between Petitioner's testimony and what he had previously told physicians. At the hearing, Petitioner testified that he had headaches, blackouts, and dizzy spells at least every other day, and difficulty grasping objects because of loss of strength in his left hand. (AR 272–75). However in 2005, he denied any unilateral weakness. (AR 25, 241). Petitioner also at that time continued to refuse medications to control or alleviate his symptoms. (AR 25, 241). Petitioner's treating physician has stated that he is not completely precluded from work. (AR 25). And finally, other evaluators have opined that Petitioner can perform light duty work. (AR 25, 295–301).

As stated above, it is the ALJ's duty to determine credibility. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The issue is not whether the Court agrees with the ALJ's credibility assessment, but whether the assessment is sound. There is substantial evidence in the record to support the

ALJ's finding that the Petitioner was not fully credible as the ALJ took into consideration the objective medical evidence, opinions of physicians that Petitioner was not precluded from all work, inconsistencies between the symptoms he complained of and his daily activities, inconsistent statements regarding his symptoms and limitations, and that further ameliorative treatment was not sought.

The Court finds that, based on the above, there is substantial evidence in the record to support the ALJ's finding that Petitioner was not fully credible. The Court will not engage in second-guessing when the ALJ's decision is sound and there is substantial evidence to support it.

## V.
## Conclusion

Based on its review of the entire record, the Court finds that the Commissioner's decision is supported by substantial evidence and is not the product of legal error. Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act will be affirmed.

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act be *AFFIRMED* and that the petition for review be *DISMISSED*.



DATED: September 4, 2007

Honorable Mikel H. Williams
Chief United States Magistrate Judge